IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| ALEXIS RINCON-CORRALES,<br>A 249-007-448<br><br>    Petitioner,<br><br>  v.<br><br>Kristi Noem, Secretary of the Department of Homeland Security; Pamela Bondi, Attorney General of the United States; Michael Bernacke, Director of the Salt Lake City Field Office, Enrique Lucero, Director of the El Paso Field Office, Dora Castro, Warden of the Otero County Processing Center,<br><br>    Respondents. | Case No. 25-801<br><br>**Petition for Writ of Habeas Corpus** |

### PETITION FOR A WRIT OF HABEAS CORPUS
### PURSUANT TO 28 U.S.C. § 2241

Petitioner, ALEXIS RINCON-CORRALES, by and through his undersigned counsel, respectfully petitions this Court for a writ of habeas corpus, and in support thereof alleges as follows:

### I.  INTRODUCTION

1. Petitioner, Alexis Rincon-Corrales, is a 21-year-old citizen of Mexico currently detained by U.S. Immigration and Customs Enforcement (ICE) at the Otero County Processing Center in New Mexico.

2. He brings this Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 to challenge the legality of his transfer from Nevada to New Mexico while his immigration proceedings were pending before the Las Vegas Immigration Court. This transfer occurred without prior notice,

disrupted scheduled hearings and attorney-client communications, and effectively obstructed Petitioner's access to counsel and due process rights guaranteed under the Fifth Amendment to the U.S. Constitution.

3. Petitioner respectfully seeks a writ ordering his return to the jurisdiction of the Las Vegas Immigration Court, or in the alternative, a declaration that EOIR jurisdiction remains in Las Vegas and that he may continue to appear remotely.

## II.     JURISDICTION

4. This Court has jurisdiction over this petition pursuant to 28 U.S.C. § 1331, as the action arises under federal law. Specifically, the petition raises issues of constitutional rights under the Suspension Clause and the due process protections afforded under the 5th Amendment of the U.S. Constitution, as well as under the Immigration and Nationality Act (INA).

5. Jurisdiction for habeas corpus relief is proper under 28 U.S.C. § 2241, as Petitioner is currently detained in New Mexico, and this petition challenges the legality of his detention, the arbitrary government action in transferring him, and the infringement of his due process rights related to his ongoing immigration proceedings.

6. Jurisdiction also exists under 5 U.S.C. § 702, which allows for judicial review of arbitrary and capricious actions by federal agencies, including Immigration and Customs Enforcement (ICE), which has unlawfully transferred Petitioner without regard to his ongoing legal proceedings, thus infringing on his right to representation and fair hearings.

## III.     VENUE

7. Venue is proper in the District of Nevada, as Petitioner resided in Las Vegas, Nevada. At the time of his detention, his immigration proceedings were initiated here, and the actions giving rise to this petition occurred in this district.

## IV.     PARTIES

8. Petitioner, Alexis Rincon-Corrales (A# 249-007-448), is a native and citizen of Mexico currently detained by Immigration and Customs Enforcement (ICE) at the Otero County Processing Center in Chaparral, New Mexico. Petitioner was previously detained at the Henderson Detention Center in Nevada, and his removal proceedings, including scheduled bond and individual hearings, were pending before the Las Vegas Immigration Court prior to his transfer. He has resided in Las Vegas, Nevada, with his U.S. citizen spouse and is represented by counsel based in Las Vegas.

9. Respondent Kristi Noem is the Secretary of the Department of Homeland Security (DHS) and is responsible for the enforcement of federal immigration laws. She is a legal custodian of the Petitioner and is sued in her official capacity.

10. Respondent Pamela Bondi is the Attorney General of the United States and the head of the Department of Justice, which oversees the Executive Office for Immigration Review (EOIR). She is sued in her official capacity.

11. Respondent Michael Bernacke is the Director of the Salt Lake City Field Office for ICE, which has administrative jurisdiction over the Petitioner's case. He is a legal custodian of the Petitioner and is sued in his official capacity.

12. Respondent Enrique Lucero is the Director of the El Paso Field Office for ICE, is the senior official responsible for the oversight and operation of ICE detention facilities in the El Paso area, including the Otero County Processing Center where Petitioner is currently detained. As such, he exercises administrative control over the facility and is a legal custodian of the Petitioner. He is sued in his official capacity only.

13. Respondent Dora Castro is the Warden of the Otero County Processing Center, the facility in which Petitioner is currently detained. The Warden is the immediate physical custodian of the Petitioner and is sued in his/her official capacity.

V. **STATEMENT OF FACTS**

14. Petitioner, Alexis Rincon Corral, is a 21-year-old citizen and native of Mexico, born on October 17, 2003, in Santiago Papasquiaro, Durango. He entered the United States without inspection on or about May 8, 2021, and has resided continuously in the country since that date. Specifically, Las Vegas, Nevada.

15. Prior to his detention, Petitioner resided at 1800 Ardmore Street, Las Vegas, Nevada 89104 since September of 2022, and he was employed full-time as a framer with Zitting Commercial Framing, a construction company in Las Vegas, Nevada.

16. Petitioner is married to Yeizen Cabanillo Cruz, a U.S. citizen born in San Bernardino, California, on June 12, 1997. The couple was lawfully married on September 14, 2024, in Las Vegas, Nevada. Petitioner's U.S. Citizen sister and family reside in Las Vegas, Nevada.

17. On April 5, 2025, the Petitioner was arrested by the Las Vegas Metropolitan Police and charged with multiple misdemeanors, including DUI, violating an instruction permit, and minor traffic violations, to wit: Las Vegas Justice Court, Case No. 25-CR-029016. He was granted release from state custody on his own recognizance (O.R.) the same day. Notably, the case closed on May 6, 2025.

18. Although a grant of release was issued by the state court, an ICE hold was placed, and on April 7, 2025, the Petitioner, a resident of Las Vegas, Nevada, was taken into ICE custody and remains detained while awaiting removal proceedings.

19. Petitioner retained undersigned counsel, who is based in Las Vegas, Nevada, and undersigned entered appearance in the Las Vegas Immigration Court on April 14, 2025.

20. Petitioners appeared before the Las Vegas Immigration Court for the first Master Hearing on April 21, 2025, where pleadings were entered, relief was declared, and the individual hearing was scheduled for May 23, 2025, and the deadline for filing relief from removal was set for May 10, 2025.

21. In the pendency of the removal proceedings, a request for bond was filed with the Las Vegas Immigration Court on May 1, 2025. A bond hearing was set for May 9, 2025.

22. On May 6, 2025, two days before the bond hearing, Petitioner was unexpectedly transferred from the Henderson Detention Center in Nevada to an ICE facility in New Mexico, Otero County Processing Center causing the cancellation of all scheduled hearings and severely hindering Petitioner's ability to prepare for his case.

## VI.    LEGAL BACKGROUND

23. It is well established that "the Fifth Amendment entitles aliens to due process of law in deportation proceedings". *Demore v. Kim*, 538 U.S. 510, 523 (2003) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)). This guarantee encompasses the right to meaningfully participate in one's defense, including the right to access and communicate with counsel. See also Matter of G-Y-R-, 23 I&N Dec. 181 (BIA 2001) (recognizing notice and access to representation as essential to due process in immigration proceedings).

24. In the context of immigration detention, the Executive Office for Immigration Review (EOIR) has established procedural rules to protect the fairness and efficiency of removal proceedings. Under 8 C.F.R. § 1003.20(b), immigration court venue may only be changed by order of the Immigration Judge with administrative control over the Record of Proceeding. Transfers by

ICE that bypass this process or result in the disruption of pending hearings and attorney access raise serious constitutional and regulatory concerns.

25. Federal courts have consistently held that immigration authorities must not manipulate jurisdiction through detainee transfers to seek favorable rulings. In *Maldonado-Cruz v. U.S.*, 883 F.2d 788, 790 (9th Cir. 1989), the court emphasized that preventing forum shopping by ICE (formerly INS) is a fundamental policy consideration. The Ninth Circuit applied its own precedent because the petitioner was apprehended, resided, and was released within its jurisdiction, ruling that the government's unilateral transfer of Maldonado to Louisiana and Texas did not establish valid ties to the Fifth Circuit and, therefore, did not justify applying Fifth Circuit law to his case.

26. Similarly, in this case, ICE's transfer of the petitioner strategically removed him from the jurisdiction where he was apprehended and had established ties, obstructing his access to legal representation and scheduled judicial proceedings. This transfer directly undermines due process by impeding his ability to defend against removal and access the protections afforded under the proper jurisdiction. The Ninth Circuit has clearly stated that administrative convenience alone is not sufficient justification for such jurisdictional maneuvering, particularly when it comes at the expense of procedural fairness. Accordingly, the petitioner respectfully requests the court to recognize ICE's transfer as improper forum shopping and restore jurisdiction to its rightful place.

27. The Administrative Procedure Act (APA) provides an additional safeguard against such agency overreach. Under 5 U.S.C. § 706(2)(A), courts may set aside agency actions that are arbitrary, capricious, or otherwise not in accordance with law. Where ICE undertakes a transfer without considering the impact on a detainee's pending hearings, access to counsel, or ability to appear remotely, such action falls short of reasoned agency decision-making and violates the procedural protections afforded under both the INA and the Constitution.

28. Accordingly, transfers that disregard EOIR control of venue, impair counsel access, and disrupt calendared hearings violate both the constitutional rights of the noncitizen and the procedural framework governing removal proceeding.

29. Recent developments further underscore growing concern that ICE transfers may be used to strategically undermine access to due process. In *Ozturk v. Hyde*, No. 2:25-cv-374 (D. Vt. 2025), a Turkish graduate student lawfully residing in Massachusetts was arrested without warning by plainclothes officers and transported across state lines, ultimately detained in Louisiana. Her counsel, initially unaware of her whereabouts, filed a habeas petition alleging the arrest was retaliatory, stemming from her public criticism of immigration enforcement. After it was revealed, she had been in Vermont during transit, the District of Vermont assumed jurisdiction and ordered her transferred back from Louisiana to facilitate access to counsel and resolve the constitutional claims. The government appealed, and on May 7, 2025, the Second Circuit in *Ozturk v. Hyde*, No. 25-1019, slip op. (2d Cir. May 7, 2025), temporarily halted the district court's order. Still, the case exemplifies judicial recognition of the due process risks inherent in ICE transfers that interrupt legal representation and pending proceedings.

30. Similarly, Petitioner submits that his transfer from Nevada to New Mexico, just days before scheduled bond and individual hearings, reflects not merely arbitrary agency action but potentially a retaliatory or strategic motive. This sudden relocation—away from counsel, family, and a jurisdiction where EOIR proceedings were well underway—appears designed to isolate Petitioner and subject him to a less accessible and more restrictive environment. This effect mirrors a disturbing pattern of ICE forum-shopping into jurisdictions with more conservative adjudication trends and diminished legal access.

31. Transfers made under such conditions are not only procedurally defective under EOIR regulations but also constitutionally suspect under the Fifth Amendment. As illustrated by Ozturk and similar cases, the equities weigh heavily in favor of judicial intervention where the transfer of a noncitizen disrupts ongoing proceedings, cuts off meaningful access to counsel, and frustrates the integrity of immigration adjudication.

## VII.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

32. Petitioner re-alleges and incorporates by reference all preceding paragraphs.

33. The Due Process Clause of the Fifth Amendment guarantees the right to a fair hearing and effective access to counsel during immigration proceedings. *Reno v. Flores*, 507 U.S. 292 (1993); *Matter of G-Y-R-*, 23 I&N Dec. 181 (BIA 2001).

34. Petitioner was transferred from the Henderson Detention Center in Nevada to the Otero County Processing Center in New Mexico just days before scheduled bond and individual hearings before the Las Vegas Immigration Court, where his removal case was actively pending and where his counsel and family reside.

35. This transfer occurred without prior notice to Petitioner or his counsel and caused the cancellation of all scheduled hearings. As a result, Petitioner's ability to communicate with counsel, prepare his applications for relief, and participate meaningfully in proceedings has been significantly impaired.

36. Petitioner's sudden relocation without a change in venue order or accommodation for remote access is arbitrary and undermines the fairness and integrity of his proceedings.

37. Therefore, Petitioner's detention and the government's transfer of him during active legal proceedings violate the Due Process Clause of the Fifth Amendment.

## SECOND CLAIM FOR RELIEF

## ARBITRARY AND CAPRICIOUS AGENCY ACTION IN

## VIOLATION OF 5 U.S.C. § 706(2)(A)

38. Petitioner re-alleges and incorporates by reference all preceding paragraphs.

39. The Administrative Procedure Act (APA) prohibits agency actions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. See 5 U.S.C. § 706(2)(A).

40. The transfer of Petitioner without notice or justification, and with full awareness of his scheduled bond and individual hearings, constitutes arbitrary and capricious conduct by ICE and DHS.

41. ICE failed to account for Petitioner's access to counsel, the active status of his proceedings, and the disruption the transfer would cause, in direct contravention of DHS's own procedural rules under 8 C.F.R. §§ 1003.17–1003.25.

42. Accordingly, this Court should find that Respondents' actions are unlawful under the APA and order appropriate relief to cure the constitutional and procedural violations.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Petitioner respectfully requests that this Court:

1) Assume jurisdiction over this matter;

2) Issue a Writ of Habeas Corpus; hold a hearing before this Court if warranted; determine that Petitioner's transfer and continued detention are not justified because the government has not established by clear and convincing evidence that Petitioner

presents a risk of flight or danger, especially given that scheduled proceedings in Las Vegas were vacated due to the transfer; and order Petitioner's return to Nevada or release with appropriate conditions of supervision, taking into account Petitioner's ability to appear remotely and to pay a bond if necessary;

3) In the alternative, issue a Writ of Habeas Corpus and find that venue remains proper in the Las Vegas Immigration Court pursuant to 8 C.F.R. § 1003.20(b), as the Court retained jurisdiction at the time of transfer and no order changing venue was issued. Petitioner's appearance by remote means remains feasible and appropriate given EOIR's regular use of remote participation and the presence of Petitioner's counsel and family in Las Vegas;

4) Prohibit the Respondents from transferring Petitioner again until his immigration proceedings are concluded or the Court determines that such transfer would not violate Petitioner's constitutional rights, including his right to counsel and meaningful access to court;

5) Award Petitioner his costs and reasonable attorneys' fees under the Equal Access to Justice Act, 28 U.S.C. § 2412, or other authority, and grant such further relief as the Court deems just and proper.

_____
DANIEL F. LIPPMANN, ESQ.

Dated: May 7, 2025